IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN WAID                                                                                              PLAINTIFF

v.                                        Civil No. 14-2079

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, John Waid, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed his applications for DIB and SSI on May 17, 2012, alleging an onset date of May 30, 2012, due to a heart attack, stent placement, diabetes, and high blood pressure.  Tr. 69, 233-241, 273, 289-290.  The Commissioner denied his application initially and on reconsideration. Tr. 73-79.  At the Plaintiff's request, an Administrative Law Judge ("ALJ") held an administrative hearing on June 3, 2013.  Tr. 87-129.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 44 years old and possessed a tenth grade education. Tr. 94-95.  He had past relevant work ("PRW") experience as an appliance assembler, forklift operator, and off road driver.  Tr. 80, 97-102, 281-288.

On June 21, 2013, the ALJ concluded that the Plaintiff's coronary artery disease status post myocardial infarction and two stent placements, obesity, diabetes mellitus, degenerative joint disease ("DJD"), ACL and PCL tears of the left knee, hypertension, and obstructive sleep apnea were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 71-73. He concluded that the Plaintiff could perform sedentary work involving only occasional climbing ramps and stairs, balancing, kneeling, stooping, crouching, and crawling. Tr. 73. Further, he also determined that he could never climb ladders, ropes or scaffolds, should avoid concentrated exposure to hazards, and should not drive as a part of his work. Tr. 73. With the assistance of a vocational expert, the ALJ found the Plaintiff could perform work as a compact assembler and a clip loading machine operator. Tr. 81.

The Appeals Council denied the Plaintiff's request for review on March 14, 2014. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This matter is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 10.

**II.    Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v.*

2

*Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. <u>Discussion:</u>

When, as in this case, the Plaintiff submits additional medical evidence to the Appeals Council ("AC"), the AC must consider the evidence if it is new and material and relates to the period before the ALJ's decision. *See* 20 C.F.R. § 404.970(b); *Williams v. Sullivan*, 905 F.2d 214, 215-216 (8th Cir. 1990). However, the timing of the evidence is not dispositive of whether the evidence is material. *Id.* To be material, evidence obtained after an ALJ decision need only relate to the claimant's condition on or before the date of the ALJ's decision. *See Basinger v. Heckler*, 725 F.29 1166, 1169 (8th Cir. 1984). Therefore, medical evidence dated after the ALJ's decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision. *See Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 1990)

Once it becomes evident that the Appeals Council considered the additional evidence, the role of the reviewing court "is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir.1994); *see Nelson*, 966 F.2d at 366, *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.1992); *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir.2003). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's decision." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.2000). In order to evaluate the new evidence, the reviewing court needs to "determine how the ALJ would have weighted the newly submitted evidence if it had been presented at the original hearing." *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir.1999); *see Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir.1994). If the reviewing court finds that the ALJ's decision is supported by the record as a whole, including the new evidence, then the ALJ's final decision remains.

In the present case, the Plaintiff submitted additional medical evidence documenting further hospitalization and treatment for his heart problems. As it is clear the AC considered this evidence, but denied review, we include this evidence in our substantial evidence analysis.

The record reveals that the Plaintiff was hospitalized in May 2012, following a myocardial infarction. Tr. 337-423. A heart catheterization revealed three-vessel coronary artery disease with severe impairment of the right coronary artery, segmental wall abnormality, and an ejection fraction rate of 55 percent. Accordingly, Plaintiff underwent stenting. Initially, his condition stabilized on medication therapy. However, in September 2012, he was again hospitalized for unstable angina. A repeat catheterization revealed 95 percent intrastent stenosis in the right coronary artery and 50 percent stenosis of the left descending artery. Tr. 504-506. Plaintiff voiced continued complaints of atypical chest pain in January 2013. At that time cardiologist, Dr. Parris, opined it was likely due to mild cardio ischemia. Tr. 442, 492-495. Dr. Parris prescribed additional medications to treat this pain, but the chest pain continued. Plaintiff reported pressure-like chest pain and exertional dyspnea, ultimately resulting in a third hospitalization in November 2013. Tr. 18-63. At that time, heart catheterization revealed continued three vessel coronary artery disease with severe involvement in the right coronary and an ejection fraction rate of 50 percent. Further, a myocardial stress test showed a trivial to mild reversible apical perfusion defect suggestive of ischemia and a fixed interior wall perfusion defect consistent with a prior myocardial infarction. Records from Dr. Parris in December 2013 revealed continued chest pain requiring medication management. Tr. 12-16.

The record contains two RFC assessments from Plaintiff's treating physician, Dr. Brandi Guthrie. She completed the first assessment in July 2012, after Plaintiff's heart attack and stent placement, but before doctors diagnosed him with intrastent stenosis. Tr. 456-458. Dr. Guthrie

5

assessed minimal limitations standing, stooping, kneeling, walking, pushing, and pulling, moderate limitations carrying, and no lifting over 20 pounds. In May 2013, after the Plaintiff's intrastent stenosis was discovered, Dr. Guthrie imposed the following limitations:

> 1) No use of hands for repetitive action in a competitive environment for reaching
> 2) No use of hands to handle/grasp
> 3) No pushing/pulling
> 4) No fine manipulation
> 5) No use of feet for repetitive operation of foot controls in a competitive environment
> 6) No squat, crawl, climb, crouch or kneel
> 7) Only occasional bend, reach above head and stoop
> 8) No exposure to unprotected heights; moving machinery; marked temperature changes; or, dust, fumes and gases
> 9) Only occasional driving automotive equipment and exposure to noise.
> 10) Patient would need to take unscheduled breaks during an 8-hour work shift
> 11) Patient would need to lie down at unpredictable times to rest
> 12) Patient's symptoms and pain are severe enough to interfere with attention and concentration and tolerate work stress
> 13) Patient would miss more than 4 days per month from work if employed
> 14) Patient would need to elevate periodically during the day
> 15) Patient would need a sit/stand/walk option at will if employed

Tr. 518-519.

The ALJ dismissed Dr. Guthrie's 2013 assessment, stating that it was inconsistent with her first assessment and with the overall evidence of record. He concluded that the Plaintiff could perform sedentary work, relying on Dr. Guthrie's first assessment and the December 2010 and September 2012 assessments of two non-examining consultants who concluded the Plaintiff could perform light work. Tr. 132-151. We note, however, that each of these assessments were completed before the Plaintiff's severe intrastent stenosis was discovered in September 2012. And, following said diagnosis, Plaintiff was prescribed additional medications to treat his chest pain and required further hospitalization. This raises concerns regarding possible absenteeism, the need for unscheduled breaks, his ability to tolerate work stress, and his ability to attend to and concentrate on the tasks before him. As the ALJ failed to address these issues in the RFC assessment, remand

is necessary to allow the ALJ to consider the additional evidence submitted to the AC documenting the Plaintiff's ongoing treatment for coronary artery disease.  On remand, the ALJ is directed to obtain an RFC assessment from Plaintiff's treating cardiologist, Dr. Parris, to determine the exact limitations imposed by his cardiac impairment.  If Dr. Parris is unavailable or otherwise unwilling to provide an assessment, then the ALJ should order a consultative examination with a cardiologist, complete with a thorough RFC assessment.

**IV.**     **Conclusion**:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 8th day of June, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE